## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### (Civil Division)

| | |
|---|---|
| FRITZ A. CALDERON )<br>12605 Farnell Drive )<br>Silver Spring, Maryland 20906 )<br> )<br>  Plaintiff, )<br> )<br> )<br>  v. )<br> )<br>DISTRICT OF COLUMBIA )<br>(A Municipal Corporation) )<br>441 Fourth Street, N.W. )<br>Washington, DC 20001 )<br> )<br>  Defendant. )<br> )<br>Serve:  Honorable Muriel Bowser, )<br>    Mayor of the District of Columbia )<br>    c/o Tabitha Braxton, Staff Assistant )<br>      Gladys Herring, Executive Assistant; or )<br>    Designated Representative )<br>    Executive Office of the Mayor )<br>    1350 Pennsylvania Avenue, N.W., Suite 316)<br>    Washington, DC 20004 )<br> )<br>Serve: Honorable Karl A. Racine, )<br>    Attorney General of the District of Columbia )<br>    c/o Designated Representative )<br>    Office of the Attorney General for D.C. )<br>    441 Fourth Street, N.W. )<br>    Washington, DC 20001 )<br>———————————————————) | Civil Action No.:_____<br><br>JURY DEMANDED |

## COMPLAINT

**COMES NOW** the Plaintiff Fritz A. Calderon, by and through undersigned counsel, and

sues Defendant District of Columbia for the cause of action stated as follows:

## INTRODUCTORY STATEMENT

1.      Plaintiff Fritz A. Calderon ("Plaintiff" or "Mr. Calderon") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*; District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01, *et seq.*; and 42 U.S.C. § 1981a, for relief from discrimination based on his national original and being subjected to a hostile working environment during the course of his employment.

2.  Defendant District of Columbia ("Defendant") discriminated against Plaintiff and subjected him to a hostile work environment during the course of his employment with the District of Columbia Housing Authority ("the Agency").

## PARTIES

3.      Plaintiff Fritz A. Calderon is currently domiciled at 12605 Farnell Drive, Silver Spring, Maryland 20906, and is a United States citizen.  At all relevant times, Mr. Calderon was an employee of the District of Columbia Housing Authority.

4.      Defendant District of Columbia is a governmental organization and municipal corporation.  The District of Columbia Housing Authority is a subordinate agency of the District of Columbia government.  Defendant is headquartered at 441 Fourth Street, N.W., Washington, DC 20001.

5.      Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of its employment, under the theory of *Respondeat Superior*.

## JURISDICTION

6.      This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under the Constitution, laws or treaties of the United States,

specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* It further has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367, as it asserts claims that arise under the District of Columbia Human Rights Act, D.C. Code § 2-1401.01, *et seq.*

7.      This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

## VENUE

8.      Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of the Defendant, and occurred in the District of Columbia. 28 U.S.C. § 1391. Venue is further proper in this district because there is no other district in which this action may otherwise be brought. *Id.*

9.      Venue is further appropriate because a substantial part of the events or omissions giving rise to this Complaint occurred within the offices of the District of Columbia Housing Authority, which is headquartered in the District of Columbia.

## EXHAUSTION OF REMEDIES

10.     Plaintiff has exhausted all of his administrative remedies.

11.     On or around March 19, 2013, Plaintiff submitted notice to the District pursuant to D.C. Code § 12-309. On April 4, 2013, the Office of Risk Management provided a letter to Plaintiff stating that it "does not accept D.C. Official Code § 12-309 notices" on behalf of the District of Columbia Housing Authority and closed his file.

12.     On or around December 11, 2012, Plaintiff timely contacted the EEOC and subsequently filed a Charge of Discrimination with the EEOC alleging discrimination on the basis of his national origin and being subjected to a hostile work environment in violation of his rights

under Title VII and the DCHRA.  Plaintiff's Charge of Discrimination was also cross-filed with the District of Columbia Office of Human Rights ("DCOHR").

13.     Plaintiff timely files this action in accordance with the EEOC's Dismissal and Notice of Rights, dated June 8, 2015, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

## FACTS

14.     Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

15.     In October 2009, Mr. Calderon, who is Hispanic, was hired by the District of Columbia Housing Authority as a police officer in the Office of Public Safety.

16.     During his employment with the Agency, Mr. Calderon received several commendations and was the only officer in the Agency nominated for the TOP COP award, which is a national award that recognizes outstanding performance of police officers across the nation.

17.     In March 2012, Mr. Calderon's immediate supervisor in his chain of command became Sergeant Paul Sinclair (American / African-American) when he was ordered to change from the evening shift to the midnight shift.

18.     Under the supervision of Sergeant Sinclair, Mr. Calderon began to be continually harassed because he is Hispanic, and Sergeant Sinclair treated him less favorably than his non-Hispanic coworkers.

19.     Mr. Calderon was the only Hispanic working under Sergeant Sinclair.

20.     In July 2012, Mr. Calderon appeared to work wearing his mountain bike uniform, which he was entitled to wear and prior to his supervision by Sergeant Sinclair had worn before;

4

however, Sergeant Sinclair ordered him to go home and remove his mountain bike uniform even though he was a certified mountain bike officer and thus authorized to wear the bike uniform.

21.     Other officers (non-Hispanic), who also patrolled on mountain bikes, were permitted to wear a mountain bike uniform, and were not required to return home to remove their uniform.

22.     Mr. Calderon was the only officer assigned to the midnight shift for over a year, which required him to address matters alone and sometimes his supervisor would deny his request for back-up.

23.     While assigned to the midnight shift, which is the busiest shift, Mr. Calderon was further responsible for the entire District of Columbia Metropolitan area but was denied compensatory time/leave by Sergeant Sinclair for any additional work that was required.

24.     Sergeant Sinclair would order Mr. Calderon on serious crime calls that required multiple officers; however, no officer was assigned to assist Mr. Calderon and Sergeant Sinclair would not acknowledge Mr. Calderon's requests to respond to dispatch.

25.     In September 2012, Mr. Calderon's assigned cruiser broke down and was placed in the shop for repairs.  Mr. Calderon's assigned mountain bike also had a flat tire.

26.     Since other officers (non-Hispanic) were routinely provided transport to and from work upon request, Mr. Calderon radioed Sergeant Sinclair for transport from his home, which was twelve (12) blocks away from his assigned location.

27.     Sergeant Sinclair denied his request and ordered him to walk to work.

28.     In September 2012, while following an order from Sergeant Sinclair to walk, Mr. Calderon severely injured his ankle and knee during the course of his duties.  Because of his injury, Mr. Calderon was admitted to the George Washington Hospital, treated and released.

29.     In response to Mr. Calderon's injury, Sergeant Sinclair was heard by Mr. Calderon's coworkers saying that he was "faking it" and he was "barely hurt." These comments were contradicted by the medical findings.

30.     Because of his injury, Mr. Calderon requested coverage for his performance of duty ("POD") injury, which was denied by Sergeant Sinclair. Instead, Mr. Calderon was required to take three (3) weeks of personal annual leave in order to recover.

31.     Other injured officers (non-Hispanic) were allowed POD coverage for their recovery for similar occurrences, which included being compensate for incurred medical bills and assigned to a particular area so the injured officer did not have to sign-in. Additionally, Sergeant Sinclair would pick up other officers (non-Hispanic) who needed transport to work and, if needed, took them home.

32.     In late 2012, upon information and belief, all of Mr. Calderon's vacation and compensatory leave requests were denied by Sergeant Sinclair.

33.     Other officers (non-Hispanic), like S.W. and P.S., were freely granted vacation and/or compensatory leave when they requested it.

34.     During roll call, other officers and some supervisors would regularly tease Mr. Calderon about his national origin (Hispanic – Columbian/Bolivian). The teasing included referring to him as a "cousin" of a criminal because they shared the same national origin.

35.     When new officers (non-Hispanic) were hired, Mr. Calderon, a more senior officer, was ordered the least desirable shifts and assignments while the new hires (non-Hispanic) and other officers (non-Hispanic) were given more desirable shifts and assignments.

36.     In order to cope with the stress caused from the constant harassment, Mr. Calderon was forced to take personal leave approximately every other week.  Likewise, Mr. Calderon began to become depressed because of the constant harassment.

37.     Mr. Calderon regularly complained (verbally and in writing) of the harassment to his chain of command, including his Sergeant, his Lieutenant and the Chief of Police, and then the EEO office.  However, no effective or remedial action was taken to prevent or stop the harassment.

38.     Because he could no longer tolerate the hostile work environment, Mr. Calderon was constructively discharged from his position in January 2014 when he was forced to resign his position.

39.     Since Mr. Calderon believes that the treatment he received was a violation of his Title VII and DCHRA rights, Mr. Calderon sought relief by complaining internally as well as submitting a Charge with the EEOC and DCOHR.

40.     Mr. Calderon now timely files this Complaint for relief from the discriminatory and illegal treatment that he experienced as a result of the Agency's misconduct.

## CAUSES OF ACTION

### COUNT ONE
**(Discrimination on the Basis of National Origin)**

41.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

42.     As a Hispanic from Columbia/Bolivia, Plaintiff is a member of a protected class.

43.     Because of his national origin (Hispanic – Columbian/Bolivian), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including different terms and conditions of employment, constructive discharge, change in tour of

duty, assigned to the least desirable shifts/assignments, denial of leave, and denial of POD status, under Title VII and the DCHRA.

44.     Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment since he had a significant change in his duties and responsibilities.

45.     Defendant knew that Plaintiff is a Hispanic from Columbia/Bolivia prior to subjecting Plaintiff to the aforementioned material adverse employment actions and was aware of the discrimination Plaintiff was subjected because of his national origin (Hispanic – Columbian/Bolivian).

46.     Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his national origin (Hispanic – Columbian/Bolivian).

47.     Defendant has limited, segregated and classified Plaintiff in a way that deprived him of employment opportunities and otherwise adversely affected his status as an employee because of his national origin (Hispanic – Columbian/Bolivian).

48.     As stated above, other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably then Plaintiff in the terms and conditions of employment.

49.     Similarly situated American employees have not been forced to resign, or similarly disciplined for having the same or similar leave issues.

50.     Plaintiff's national origin was a determining factor in Defendant's unlawful conduct toward Plaintiff.

51.     Plaintiff's national origin was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

52.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

53.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of his national origin (Hispanic – Columbian/Bolivian).

54.     Defendant discriminated against Plaintiff because of his national origin (Hispanic – Columbian/Bolivian) by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

55.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

56.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.  Further, Defendant's treatment and actions were ongoing.

57.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

   a.   Award compensatory damages;

   b.   Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential,

9

reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

c. Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d. Award reasonable attorney fees, costs, and expenses incurred for this action;

e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g. Supervisory training for the supervisors at issue herein;

h. Award equitable, declaratory, and injunctive relief; and

i. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT TWO
### (Hostile Work Environment)

58.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

59.     As a result of Plaintiff's protected status, Plaintiff's supervisors routinely humiliated Plaintiff and engaged in persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment.

60.     Plaintiff was regularly and continually subjected to harassing conduct from his coworkers and Sergeant Sinclair that included isolation from his coworkers, being ordered to go home and remove his mountain bike uniform that he had earned the right to wear, was denied transport to home  from the hospital for a POD injury, was ordered to walk to work and denied a ride that his coworkers regularly received, was denied POD status, was openly teased about his national origin, ordered to the midnight shift, was assigned the least desirable duties/shifts, unjustly

criticized by his supervisor, ordered on serious crimes with no assistance, ignored when radioing in to Sergeant Sinclair, denied transport to work, and was denied leave, which created a hostile and abusive work environment.

61.     Plaintiff believes that he was subjected to a hostile work environment based on his national origin (Hispanic – Columbian/Bolivian).

62.     Defendant's unlawful conduct was unwelcome.

63.     Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint created a hostile and abusive work environment.

64.     Plaintiff was subjected to harassment because of his national origin (Hispanic – Columbian/Bolivian), and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

65.     Defendant knew or should have known of the harassment.  Defendant failed to adequately investigate the harassment and took no effective, immediate or remedial action. Despite Plaintiff's complaints, the harassment continued unabated and increased over time.

66.     By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

67.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

68.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.  Further, Defendant's treatment and actions were ongoing.

69.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

     a.   Award compensatory damages;

     b.   Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

     c.   Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

     d.   Award reasonable attorney fees, costs, and expenses incurred for this action;

     e.   Order Defendant to institute a policy and procedure to be implemented against discrimination;

     f.   Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

     j.   Supervisory training for the supervisors at issue herein;

     k.   Award equitable, declaratory, and injunctive relief; and

     l.   Award such other and further relief as this Honorable Court deems just and proper.

## EQUITABLE RELIEF

70.     Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

71.   Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendant and could result in further illegal actions on the party of Defendant, by and through its agents, servants and employees.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

   a.   Order the Defendant to institute a policy and procedure to be implemented against discrimination;

   b.   Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

   c.   Supervisory training for the supervisors at issue herein; and

   d.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

72.   Plaintiff demands a trial by jury on all issues set forth herein.

Respectfully submitted,

By:   _donna williams rucker /mk_

DONNA WILLIAMS RUCKER
   (D.C. Bar No. 446713)
MACKENZIE B. COY
   (D.C. Bar No. 1004847)
RUCKER & ASSOCIATES, P.C.
888 Sixteenth Street, N.W., Suite 800
Washington, DC 20006
Office: (202) 349-9830
Facsimile: (202) 355-1399
Email: drucker@ruckerlawpc.com
         mcoy@ruckerlawpc.com

August 31, 2015                    Counsel for Plaintiff